F I L E D

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB **1** .9 2008

JUDGE JAMES F. HOLDERMAN
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| STRATEGIC LENDING SOLUTIONS, LLC | : | |
| | : | Case No. 07C 6136 |
| Plaintiff, | : | |
| | : | Honorable: MAGISTRATE JUDGE KEYS |
| vs. | : | JUDGE HOLDERMAN |
| | : | |
| JOSEPH L. HEARD, SR., d/b/a JLH & | : | |
| ASSOCIATES, and ARPEGGIO INVESTMENTS, | : | JURY TRIAL DEMANDED |
| LP and ARPEGGIO MANAGEMENT, LLC | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT JOSEPH L. HEARD'S ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT

### PARTIES

1.    Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegation.

2.    Admitted in part; denied in part.

     Admitted that Defendant Arpeggio Investments, LP is a Pennsylvania limited partnership which provides funds to brokers.

     Denied that Defendant Arpeggio Investments, LP entered into a joint venture with Defendant Joseph L. Heard.

     Denied that Defendant Arpeggio Investments, LP and Defendant Joseph L. Heard agreed to purchase a secured note from Plaintiff.

3.    Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegation.

4.    Admitted in part; denied in part.

     Admitted that Defendant Joseph L. Heard is a citizen of Pennsylvania doing business as JLH & Associates.

     Denied that Defendant Joseph L. Heard entered into a joint venture with Defendant Arpeggio Investments, LLP.

     Denied that Defendant Joseph L. Heard and Defendant Arpeggio Investments, LLP agreed to

purchase a secured note from Plaintiff.

## JURISDICTION AND VENUE

5.      Denied in part; admitted in part.

        Denied that subject matter jurisdiction is appropriate pursuant to 28 USC, Section 1332.

        Admitted that there is complete diversity of citizenship between the parties.

        Denied that the amount in controversy is greater than seventy-five thousand dollars ($75,000).

6.      Denied.

7.      Denied.

## FACTS

8.      Denied.

9.      Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegation.

10.     Denied.

11.     Admitted in part; denied in part.

        Admitted that Plaintiff wired $7,000 to Judy L. Heard, the wife of Defendant Joseph L. Heard.

        All other allegations are denied.

12.     Admitted only that there is an unsigned, May 24, 2007 letter to Plaintiff from Defendant Arpeggio Investments, LP.

13.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegations.

14.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegations.

15.     Denied.

16.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegation as to Plaintiff's reliance and venture capital agreement.

        Denied that Defendant Joseph L. Heard gave Plaintiff any confirmation as to readiness of funds.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegations.

24.     Denied.

25.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegations.

## COUNT I – BREACH OF CONTRACT AGAINST
### ARPEGGIO INVESTMENTS, LP and ARPEGGIO MANAGEMENT, LLC

26.     Defendant Joseph L. Heard's responses to paragraphs 1 – 25 are hereby realleged as if fully set out herein.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegations.

31.     Denied.

32.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the truth of the allegations.

        WHEREFORE, Plaintiff's prayer for judgment and damages in the amount of $107,000, plus interest and other relief, should be denied as to all Defendants.

## COUNT II – BREACHOF CONTRACT AGAINST
### JOSEPH L. HEARD, d/b/a JLH & ASSOCIATES

33.     Defendant Joseph L. Heard's responses to paragraphs 1 – 32 are hereby realleged as if fully set out herein.

34.     Denied.

35.     Denied.

36.    Denied.

37.    Denied.

WHEREFORE, Plaintiff's prayer for judgment and damages against Defendant Joseph L. Heard, d/b/a

JLH & Associates, in the amount of $107,000, plus interest and other relief, should be denied.

## COUNT III – BREACH OF CONTRACT AGAINST
## JOSEPH L. HEARD, d/b/a JLH & ASSOCIATES

38.    Defendant Joseph L. Heard's responses to paragraphs 1 – 37 are hereby realleged as if fully set out
herein.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

WHEREFORE, Plaintiff's prayer for judgment and damages against Defendant Joseph L. Heard,

d/b/a JLH & Associates, in the amount of $400,000, plus interest and other relief, should be denied.


## COUNT IV – BREACH OF CONTRACT AGAINST
## ARPEGGIO INVESTMENTS, LP and ARPEGGIO MANAGEMENT, LLC

51.    Defendant Joseph L. Heard's responses to paragraphs 1 – 50 are hereby realleged as if fully set out
herein.

52.    Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the
truth of the allegations.

53.    Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the

truth of the allegations.

54.     Denied.

55.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the

truth of the allegations.

56.     Defendant Joseph L. Heard lacks knowledge or information sufficient to form a belief about the

truth of the allegations.

        WHEREFORE, Plaintiff prayer for judgment and damages in the amount of $400,000, plus

interest and other relief, should be denied as to all Defendants.

COUNT V – FRAUD AGAINST JOSEPH L. HEARD, d/b/a<br>JLH & ASSOCIATES

57.     Defendant Joseph L. Heard's responses to paragraphs 1 – 56 are hereby realleged as if fully set out

herein.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

        WHEREFORE, Plaintiff's prayer for judgment and damages against Defendant Joseph L. Heard,

d/b/a JLH & Associates, in the amount of $400,000, plus interest and other relief, should be denied.

**DEFENDANT JOSEPH L. HEARD'S AFFIRMATIVE DEFENSES**

**LACK OF SUBJECT MATTER JURISDICTION**

1.      Contrary to the assertion of Plaintiff, this case provides no subject matter jurisdiction for this

Court in that there is no federal question, which question is required by 28 U.S. Code, Section 1331.

5

WHEREFORE, Defendant Joseph L. Heard, d/b/a JLH & Associates requests that this court rule that Plaintiff's case lacks the federal question necessary to meet the subject matter requirements of 28 U.S. Code, Section 1331.

## LACK OF PERSONAL JURISDICTION

2.      Defendant Joseph L. Heard's allegation in paragraph 1 is hereby realleged as if fully set out herein.

3.      Although 28 U.S. Code, section 1332 provides for jurisdiction where there is diversity of citizenship, Defendant Joseph L. Heard had insufficient contact with the State of Illinois to afford such jurisdiction to this court.

4.      All of the real estate which might have been part of the deal, had Plaintiff met its obligations, is situated in Philadelphia, Pennsylvania.

5.      As there is no contract, no contract documents were signed in Illinois.

6.      A Philadelphia, Pennsylvania-based representative of Plaintiff contacted Defendant Joseph L. Heard to seek his help in obtaining funding for Plaintiff.

7.      Defendant Joseph L. Heard's efforts on behalf of Plaintiff included trips to Phoenix, Arizona; Boca Raton, Florida; and Atlanta, Georgia.

WHEREFORE, Defendant requests that the court dismiss Plaintiff's matter for lack of subject matter jurisdiction, and lack of personal jurisdiction.

## IMPROPER VENUE

8.      Defendant Joseph L. Heard's allegations in paragraphs 1 – 7 are hereby realleged as if fully set out herein.

9.      For the same reasons set out on paragraphs 2 through 7 above, Chicago is an improper venue for this matter, even if there was a basis in law to proceed.

10.     Given the location of Defendant's office and home; and given the facts in the matter; if there is a basis in law to proceed, the venue should be Philadelphia, Pennsylvania.

WHEREFORE, Defendant requests that the court order that the venue of this matter be changed to Philadelphia, Pennsylvania, if there is a basis in law to proceed.

**6**

## LACK OF CONTRACT / NO CONSIDERATION

11.     Defendant Joseph L. Heard's allegations in paragraphs 1 – 10 are hereby realleged as if fully set out herein.

12.     Defendant Joseph L. Heard never entered into a contract with Plaintiff.

13.     Both parties consistently describe the funds provided to Defendant as money for "expenses", expense money which Defendant offered to return to Plaintiff. Plaintiff never paid Defendant any fee for services, nor was any fee discussed or otherwise bargained for.

14.     The letters and e-mails do not comprise a contract. In fact, it is clear that the parties never agreed in writing, or otherwise, exactly what it was that each party was to do.

15.     Contrary to Plaintiff's assertion, there was no secured note. There is a "Promissory Note" which makes reference to being secured. However, no security agreement is attached to the document; and there is no any indication that such an agreement exists. (Attached as Exhibit"A").

16.     There is no indication that any money was conveyed from the Plaintiff to the alleged Borrower.

17.     There is no information provided regarding the terms on which the money was supposedly loaned.

18.     There is no mention of the collateral required to secure the funding under the Promissory Note.

19.     The Promissory Note is signed only by the alleged Borrower, with no signature verification.

        WHEREFORE, Defendant requests that the court dismiss the matter because there was no contract and no consideration.

## STATUTE OF FRAUDS

20.     Defendant Joseph L. Heard's allegations in paragraphs 1 – 19 are hereby realleged as if fully set out herein.

21.     Even if there had been a contract between the parties, it would have been invalid and unenforceable because the Illinois Statute of Frauds requires that contracts of the type at issue be in writing.

        WHEREFORE, Defendant requests that the court dismiss Plaintiff's matter because of its failure to comply with the Statute of Frauds.

### FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

22.     Defendant Joseph L. Heard's allegations in paragraph 1 – 21 are hereby realleged as if fully set out Herein.

23.    Plaintiff has failed to state a claim upon which relief can be granted.

24.    There is no contract.

25.    Even if there was a contract, it would violate the Satute of Frauds which requires that it be in writing.

26.    There is no secured note which might have provided a basis in law for a claim, had there been a contract between the parties.

WHEREFORE, Defendant requests that the court dismiss, with prejudice, Plaintiff's matter.

Date 02/18/2008

**Joseph L. Heard, Sr.**

8

# PROMISSORY NOTE
(Fixed Rate, Installment Payments)

FEBBUARY 17, 2007                      LOS ANGELES                    CALIFORNIA
[Date]                                 [City]                         [State]
MICHAEL GERBEHIWET, 16609 QUEEN SIDE DRIVE, WEST COVINA, CA 91722
[Borrower's] Address}

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $465,609.37(this amount is "principal" plus "interest"), to the order of the Lender. The Lender is STRATEGIC LENDING SOLUTIONS LLC (SLS). I will make all payments under this Note in the form of cash, check, certified funds or money order at the option and direction of Lender. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9.25 %.  The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

I will pay principal and interest by making a "balloon payment" of the full amount on or before the date called the "maturity date." The maturity date of this loan is May 25, 2007.  I will make my monthly payments at STRATEGIC LENDING SOLUTIONS LLC, 231 W. Main Street, Suite 210, Carpentersville, IL 60110 or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY
{initial desired provision}

_____M-G-_____

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.
I may make a full prepayment or partial prepayments without paying a prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

_____

I shall not have the right to prepay this Note unless I pay a prepayment penalty for early prepayment in the amount determined by the Note Holder, not to exceed the maximum amount allowed by the laws of the state where the property is located.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

_____M-G-_____
Initials

- 1 -

Exhibit A

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments and Receipt of Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10% of my overdue payment of principal and interest for each late payment. I will pay this late charge promptly but only once on each late payment. In no event will the late charge exceed the maximum amount allowed by the applicable state law.

Payments to the note holder shall not be considered made until received by the Note Holder at the address specified. Mailing is insufficient to constitute delivery to the Note Holder. The number of days required for payment of a late charge shall not be considered as a grace period for the payment date required under this Note and the Borrower shall be default if the payment is not paid on the due date.

### (B) Default

If I do not pay the full amount of each payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Borrower's Address above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

*M-G-*
Initials

- 2 -

**10. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) THE UNDERSIGNED

Borrower: MICHAEL GERBEHIWET

-3-

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

OCT 3 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |
|---|---|
| STRATEGIC LENDING SOLUTIONS, LLC | ) ) ) ) |
|  | ) Case No. |
| Plaintiffs, | ) ) |
|  | ) Hon. |
| vs. | ) ) |
|  | ) |
| JOSEPH L. HEARD, SR., d/b/a JLH & ASSOCIATES, and ARPEGGIO INVESTMENTS, LP and ARPEGGIO MANAGEMENT, LLC | ) ) ) ) ) |
|  | ) |
| Defendants. | ) ) ) ) |

**07C  6136**

MAGISTRATE JUDGE KEYS
JUDGE HOLDERMAN

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

Plaintiff, Strategic Lending Solutions, LLC, by and through its attorneys,

The Patterson Law Firm, PC, for its Complaint against Defendants Joseph L.

Heard, d/b/a JLH & Associates, Arpeggio Investments, LP, and Arpeggio

Management, LLC, states as follows:

### PARTIES

1.    Plaintiff Strategic Lending Solutions, LLC is a limited liability

company organized under the laws of Illinois.  Strategic Lending Solutions,

LLC is engaged in the business of securing financing from lenders on behalf

of businesses.

i

2.      Defendant Arpeggio Investments, LP is a Pennsylvania limited partnership which provides funds to brokers such as Strategic Lending Solutions, LLC. Arpeggio Investments, LP entered into a joint venture with Defendant Joseph L. Heard to purchase a secured note from Plaintiff.

3.      Defendant Arpeggio Management, LLC is a Pennsylvania limited liability company and the general partner of Arpeggio Investments, LP.

4.      Defendant Joseph L. Heard, Sr. is a citizen of Pennsylvania doing business as JLH & Associates. Joseph L. Heard entered into a joint venture with Defendant Arpeggio Investments, LLP to purchase a secured note from Plaintiff.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is appropriate pursuant to 28 USC § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy is greater than seventy-five thousand dollars ($75,000).

6.      Personal jurisdiction is appropriate because defendants have purposefully availed themselves of the laws of Illinois and because personal jurisdiction is proper under 735 ILCS 5/2-209.

7.      Venue is appropriate pursuant to 28 USC § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in Chicago, Illinois.

## FACTS

8.      Strategic Lending Solutions (hereinafter "SLS") held a secured note from one it its clients, the face value of which was $465,000. (The "Secured Note")

9.      SLS needed to raise capital before the Secured Note came due, so it engaged a broker, Don Adams, to sell the Secured Note in the note broker community.

10.     On or about May 16, 2007, Arpeggio, LP (hereinafter "Arpeggio), in a joint venture with Joseph L. Heard d/b/a JLH Associates (hereinafter "JLH"), agreed to purchase the Secured Note for $350,000. The payment was to occur on or before May 23, 2007. (See Commitment Letter of May 16, 2007, attached hereto as Exhibit A, hereinafter "Commitment Letter, Ex. A"). SLS was required to pay up front $7,000 in expenses as a condition precedent to obtaining the funding. (See May 16, 2007, memorandum from Joseph Heard to Brian Knight, attached hereto as Exhibit B).

11.     On or about May 17, 2007, SLS wired the $7,000 to Judy L. Heard, Joseph Heard's wife, at Heard's request. (Harris Bank Wire Transfer Request, attached hereto as Exhibit C, hereinafter "Wire Transfer, Ex. C"). SLS was ready, willing, and able to fully perform on May 23, 2007. Both Arpeggio and JLH failed to purchase the Secured Note. SLS performed all conditions precedent.

12.     On May 24, 2007, Arpeggio provided SLS with a letter stating that it could not purchase the Secured Note as was required by the Commitment

3

Letter; however, the May 24 Letter also stated Arpeggio still intended to

honor the agreement by purchasing the Secured Note. (Letter from Arpeggio

Investments to Knight of May 24, 2007, attached hereto as Exhibit D,

hereinafter "May 24 Letter, Ex. D").

13.    SLS relied on Defendants' promise and committed the $350,000, which

represented the proceeds to which it was entitled from the sale of the Secured

Note, to other projects.  When Defendants were again unable to purchase the

Secured Note, SLS was forced to mitigate its damages by offering the Secured

Note for sale in the note brokerage community.  Due to SLS's temporal

constraints caused by Defendants' delays, the highest offer made on the

Secured Note was $250,000, $100,000 less than the price agreed to by

Defendants.

14.    Brian Knight, an employee of SLS, had a conversation with Mike

Walden of Arpeggio, in which he informed Walden of the damages SLS had

suffered as a result of the breach of contract.  Walden told Knight to go to

JLH to obtain compensation.  Knight, on behalf of SLS, agreed to talk to

JLH, but did not release Arpeggio from liability for its breach of contract.

15.    On or about June 6, 2007, JLH and SLS orally agreed that JLH could

retain the $7,000 payment if JLH would open a secured line of credit for SLS

to help mitigate the damages from Defendants' breach of contract.  JHL

agreed to make the funding available on June 22, 2007.  On June 15, 2007,

JLH reiterated its commitment to honor this new agreement.  (See email

4

from Heard to Knight of June 15, 2007, attached hereto as Exhibit E,
hereinafter "June 15 Email, Ex. E").

16.    In reliance on this new agreement, SLS entered into a venture capital
agreement whereby SLS agreed to provide a $550,000 investment into
another company.  Before entering into the agreement, Knight once again
confirmed with JLH that the funds would be ready by June 22, 2007, so that
SLS could close on the venture capital deal by July 10, 2007.

17.    On June 22, 2007, the funding from JLH to SLS was unavailable.
JLH then informed SLS that it was close to securing the line of credit and
that the funds would be available on July 10, 2007, if SLS provided a formal
written request to withdraw funds.

18.    On June 28, 2007, SLS provided the formal written request for the
withdrawal of $550,000 through the secured line of credit that was promised
by JLH.  (See Line of Credit Request, attached hereto as Exhibit F,
hereinafter "Line of Credit Request, Ex. F").

19.    On July 10, 2007, JLH provided a written statement to SLS stating
that "[JLH had] available a secure bridge line of credit" for $550,000.  (See
letter of July 10, 2007, attached hereto as Exhibit G, hereinafter "July 10
Letter, Ex. G").  According to JLH, all that was necessary to draw from the
line of credit was to secure the line by senior funding, which needed to be
completed by Defendants.  (July 10 Letter, Ex. G.)  JLH further proposed
putting the funding in an escrow account so that SLS could use the money as

proof of funds for the other transactions in which SLS was involved. (Id.)
The funds were still not available to SLS.

20.    On July 20, 2007, JLH agreed to increase SLS's line of credit to
$900,000, which could be drawn on in three weeks if SLS granted yet another
extension. (See Letter of July 20, 2007, attached hereto as Exhibit H,
hereinafter "July 20 Letter, Ex. H"). SLS agreed.

21.    On August 9, 2007, JLH provided SLS with a balance sheet showing
that JLH was going to secure its line of credit with properties held in a trust
called T/A Midwest Strategic Funding Trust, Inc. It listed assets worth
$6,689,140. (See Balance Sheet, attached hereto as Exhibit I, hereinafter
"Balance Sheet, Ex. I").

22.    On August 16, 2007, JLH sent another letter to SLS unilaterally
changing the funding date to August 27, 2007. (See Letter of August 16,
2007, attached hereto as Exhibit J, hereinafter "Aug. 16 Letter, Ex. J"). Once
again, on August 27, 2007, the funding was not available. JLH then
informed that the trust would be set up in three days, and that funding
would therefore be available no later than September 5, 2007.

23.    On or about August 17, 2007, in reliance on the promises and
representations of JLH, SLS entered into a contract with a third party to
invest $40,000 into the company so that it could go public. SLS needed the
funds from the $900,000 line of credit to fulfill its obligations under the
contract.

6

24.     On September 5, 2007, the funding was still not available and JLH sent another letter to SLS stating that the funding would now be available in 10 days. (See letter of September 5, 2007, attached hereto as Exhibit K, hereinafter "Sept. 5 Letter, Ex. K"). On September 17, 2007, however, more than 10 days later, the funding was still not available and JLH ceased communication with SLS.

25.     As a result of the breaches of JHL, LVCS threatened to sue SLS for breach of contract because SLS could not make the $40,000 investment.

### COUNT I – BREACH OF CONTRACT AGAINST ARPEGGIO INVESTMENTS, LP and ARPEGGIO MANAGEMENT, LLC

26.     Plaintiff restates and re-alleges paragraphs 1-25 as though fully stated herein.

27.     On or about May 16, 2007, SLS received a commitment of $350,000 from Arpeggio against a promissory note held by SLS. Closing was to occur on May 23, 2007. (Commitment Letter, Ex. A.)

28.     Plaintiff had performed all conditions precedent including wiring $7,000 to an account controlled by Judy Heard, wife of Defendant Joseph L. Heard, d/b/a JLH & Associates. (See Wire Transfer, Ex. C.)

29.     On May 24, 2007, Arpeggio still had not purchased the note. Arpeggio then promised by letter to fulfill its end of the contract, but never fulfilled that obligation. (May 24 Letter, Ex. D.)

30.     Because SLS was in the business of brokering loans, SLS needed the money from the promissory note very quickly so it could fund other deals.

7

31.    Defendants breached the contract by failing to purchase the promissory note.

32.    SLS was forced to find an alternative buyer for the note because of the breach by Arpeggio Investments, LLC at a loss of more than $100,000. Moreover, Arpeggio Investments, LLC never returned the $7,000 given to it by SLS.

WHEREFORE, the Plaintiff, Strategic Lending Solutions, LLC, respectfully prays that this Honorable Court enter judgment in favor of the Plaintiff and against the Defendants Arpeggio Investments, LP, and Arpeggio Management, LLC, in the sum of $107,000 plus interest and for such other relief that this Court deems appropriate.

### COUNT II – BREACH OF CONTRACT
### AGAINST JOSEPH L. HEARD, d/b/a JLH & ASSOCIATES

33.    Plaintiff restates and re-alleges paragraphs 1-32 as though fully stated herein.

34.    Plaintiff entered a contract with Defendant JLH on May 16, 2007, to sell a promissory note to JLH, acting in joint venture with Defendant Arpeggio. (Commitment Letter, Ex. A.)

35.    JLH admitted that it breached the contract in a letter dated June 6, 2007. (See June 6, 2007, Letter from Joseph L. Heard to Knight, attached hereto as Exhibit L). The letter also stated that JLH returned SLS's $7,000. In fact, Defendants never returned SLS's $7,000.

36.    As a result of JLH's failure to perform on the contract, Plaintiff was forced to obtain alternative financing.

37.    Plaintiff's alternative financing resulted in Plaintiff suffering damages of over $107,000 because of the breach by Defendant Heard.

WHEREFORE, the Plaintiff, Strategic Lending Solutions, LLC, respectfully prays that this Honorable Court enter judgment in favor of the Plaintiff and against the Defendant Joseph L. Heard, d/b/a JLH & Associates, in the sum of $107,000 plus interest, attorney fees, costs of this suit and for such other relief that this Court deems appropriate.

## COUNT III – BREACH OF CONTRACT
## AGAINST JOSEPH L. HEARD, d/b/a JLH & ASSOCIATES

38.    Plaintiff restates and re-alleges paragraphs 1-37 as though fully stated herein.

39.    On June 6, 2007, in an effort to avoid litigation over his previous breach of contract, JLH promised to create a line of secured credit that Plaintiff could then draw on in exchange for releasing JLH and Arpeggio from a claim of damages resulting from their breach. Arpeggio agreed to this arrangement by telling Knight that JLH would mitigate the damages. Funding was to be available on June 22, 2007.

40.    On June 22, 2007, funding was not available, and JLH informed SLS that it would be available on July 10, 2007, if SLS provided a formal request to draw on the funds.

9

41.    In a letter dated June 28, 2007, SLS formally requested to draw on that line of credit in order to complete a joint venture where SLS was to invest $550,000 into another business. SLS had performed all conditions precedent. (Line of Credit Request, Ex. F.)

42.    On July 10, 2007, Defendant still had not issued Plaintiff the funds, but stated that $550,000 was available and could be put in an escrow account to show proof of funds for transactions that the Plaintiff entered into. July 10 Letter, Ex. G.)

43.    On July 20, 2007, Defendant JLH sent Plaintiff another letter increasing the promised line of credit to $900,000 and stating that the financing must be secured by additional assets, which Defendant JLH was in the process of doing, and that the process was nearly complete. (July 20 Letter, Ex. H.) JLH never set up an escrow account, nor did it provide a line of credit.

44.    To substantiate its claim, on August 9, 2007, Defendant JLH sent Plaintiff a balance sheet as proof that it had the assets to cover the secured line of credit. (Balance Sheet, Ex. I.)

45.    On August 16, 2007, Defendant JLH informed Plaintiff by letter that the line of credit would be established by August 27, 2007. (Aug. 16 Letter, Ex. J.) By August 27, 2007, it had failed to provide the line of credit.

46.    On September 5, 2007, JLH promised SLS that he would secure financing in 10 days. (Sept. 5 Letter, Ex. K.)

10

47.    On September 17, 2007, more than 10 days after JLH's assurances, JHL failed to make financing available.

48.    JLH breached its contract with SLS by failing to set up a secured line of credit on June 22, 2007, July 10, 2007, August 27, 2007, and September 15, 2007.

49.    SLS informed JLH that its breach of contract would result in consequential damages to SLS on or before June 21, 2007. Specifically, Brian Knight notified JLH that SLS had entered into a contract to invest $550,000 into one third party company and 40,000 into a second, yet JLH still committed to have the line of credit ready by September 15, 2007.

50.    In reliance on Defendant JLH's promises, Plaintiff spent time and money securing loans and other ventures which required Defendants' performance to fund. Specifically, it promised to fund $550,000 into a joint venture, and another $40,000 into a casino. Before entering each contract, SLS asked JLH to make assurances that the line of credit would be available. SLS suffered harm to its reputation when it delayed performance and was ultimately unable to perform under its contracts with third parties. Moreover, one of the third parties has threatened to sue SLS for its failure to perform under its contract. SLS suffered direct, consequential, and incidental damages because of the breach by JLH.

WHEREFORE, the Plaintiff, Strategic Lending Solutions, LLC, respectfully prays that this Honorable Court enter judgment in favor of the Plaintiff and against the Defendant Joseph L. Heard, d/b/a JLH & Associates,

11

in the sum of $400,000 plus interest and for such other relief that this Court deems appropriate.

### COUNT IV – BREACH OF CONTRACT AGAINST
### ARPEGGIO INVESTMENTS, LP AND ARPEGGIO MANAGEMENT, LCC

51.    Plaintiff restates and re-alleges paragraphs 1-50 as though fully stated herein.

52.    On or about June 6, 2007, Mike Walden of Arpeggio, in an effort to prevent a lawsuit, designated JLH as its agent and informed SLS that it should obtain compensation for the losses it suffered as a result of Arpeggio and JLH's breach from JLH.

53.    SLS did not release Arpeggio from liability for its breach of contract.

54.    JLH was acting in part on behalf of Arpeggio from June 6, 2007, through September 15, 2007.

55.    Arpeggio breached its contract with SLS because it is liable for the actions that JLH took on its behalf to prevent a lawsuit from being filed against both Arpeggio and JLH.

56.    In reliance on Defendant Arpeggio's assurances that JLH would compensate SLS, Plaintiff spent time and money securing loans and other ventures for which Arpeggio was responsible for funding. Specifically, SLS was responsible for funding $550,000 into a joint venture, and another $40,000 into a casino. Before entering each contract, SLS asked Arpeggio, through JLH, to make assurances that the line of credit would be available.

52

SLS suffered direct, consequential, and incidental damages because of the breach by Arpeggio.

WHEREFORE, the Plaintiff, Strategic Lending Solutions, LLC, respectfully prays that this Honorable Court enter judgment in favor of the Plaintiff and against the Defendants Arpeggio Investments, LP, and Arpeggio Management, LLC, in the sum of $400,000 plus interest and for such other relief that this Court deems appropriate.

## COUNT V – FRAUD AGAINST JOSEPH L. HEARD, d/b/a JLH & ASSOCIATES

57.    Plaintiff restates and re-alleges paragraphs 1-56 as though fully stated herein.

58.    In order to avoid legal action by Plaintiff, Defendant JLH represented to Plaintiff that he could secure a $550,000 line of credit for Strategic Lending Solutions on or before June 22, 2007.

59.    On July 10, 2007, Defendant JLH wrote Plaintiff a letter stating that "[it had] available a secure bridge line of credit." (July 10 Letter, Ex. G.) In fact, Defendant JLH did not secure a bridge line of credit for Plaintiff.

60.    On July 20, 2007, Defendant JLH wrote another letter to Plaintiff stating, "Regarding our discussion for a $900,000.00 bridge line of credit, we have available a secure bridge line of credit. . . . We have been working on this process for about three weeks. It is nearly complete." (July 20 Letter, Ex. H.) In fact, Defendant JLH knew that the process was not nearly complete. Defendant JLH knew that he would be unable to perform.

61.    On August 9, 2007, Defendant JLH sent Plaintiff an e-mail with a balance sheet attached, stating that the balance sheet "represent[ed] the assets and liabilities which [Brian Knight] or [SLS] will manage with a line of credit of $1,000,000." (Balance Sheet, Ex. I.)

62.    Defendant JLH provided Plaintiff with a balance sheet purporting to be from T/A Midwest Strategic Funding Trust, Inc. showing $6,689,140 in assets to be used in securing the line of credit for Plaintiff. (Balance Sheet, Ex. I.)

63.    T/A Midwest Strategic Funding Trust, Inc. is not an incorporated entity. Defendant JLH knew this fact and intentionally misrepresented the existence of the alleged corporation and the assets belonging to the alleged corporation.

64.    In a letter dated September 5, 2007, Defendant JLH once again referred to the balance sheet, stating, "Please refer to the Balance Sheet Pro Forma we sent to you for proof of capability." (Sept. 5 Letter, Ex. K).

65.    Defendant JLH intended to induce the Plaintiff to forbear on its lawsuit against Defendants by providing Plaintiff with false and misleading information. Defendant JLH intended to prevent Plaintiff from obtaining alternative financing by repeatedly requiring that Plaintiff close with his office. (July 10 Letter, Ex. G).

66.    In reliance on the statements by Defendant JLH, Plaintiff entered into a contract with a third party to provide $40,000 in funding. Plaintiff failed to

14

provide the contracted for funding, and has suffered damages in lost profits of $400,000.

67.    Plaintiff actually relied on these statements and did not sue Defendants for their previous breach and did not require Defendants to return its $7,000.

WHEREFORE, the Plaintiff, Strategic Lending Solutions, LLC, respectfully prays that this Honorable Court enter judgment in favor of the Plaintiff and against the Defendant Joseph L. Heard, d/b/a JLH & Associates, in the sum of $400,000 plus punitive damages, interest, attorney fees, costs of this suit and for such other relief that this Court deems appropriate.

Respectfully Submitted,

October 30, 2007                    By: _Kristi L. Browne_
                                        Kristi L. Browne

Thomas E. Patterson (3128587)
Kristi L. Browne (6195553)
Attorneys for Plaintiff
The Patterson Law Firm, P.C.
33 N. LaSalle, Suite 3350
Chicago, Illinois 60602
(312) 223-1699·

15

## VERIFICATION

Brian Knight, being first duly sworn, states as follows:

    a.    I am an employee of Strategic Lending Solutions, LLC and am authorized to act

            on its behalf;

    b.    I have read the above and foregoing Verified Complaint and Exhibits and know

            the contents thereof; and

    c.    Allegations made herein are true, correct and complete to the best of my

            knowledge and belief.

Further affiant sayeth not.

                                              _____
                                              Brian Knight

                                            _____
                                            Title

                                            _____
                                            Company

Subscribed and sworn to
before me this 26 day
of October, 2007.

_____
Notary Public

"OFFICIAL SEAL"
INAYAT PRADHAN
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 01/18/2010

### Arpeggio Investments LP
PO Box 487
Wynnewood, PA 19096
215-751-9050
mwaldenloans@comcast.net

May 16, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

### Re: Bridge Loan Commitment -- $350,000.00

Dear Brian,

We are providing you a commitment of $350,000.00, bridge funding, against your Promissory Note. Bridge Funding is subject to having in a Security, Facility that can be Hypothecated by the Bridge Loan Amount.

Bridge funding may be closed out by senior funding. Closing will take place at a location designated by Arpeggio Investments LP. Loan will be Funded on or before May 23, 2007.

If you have any questions concerning the above, please contact me at the number shown herein.

Yours truly,

Mike Walden
Arpeggio Investments LP

EXHIBIT

## Memorandum

| | |
|---|---|
| Date: | May 16, 2007 |
| To: | Brian Knight |
| From: | Joe Heard |
| Subject: | Expenses in Connection with Bridge Funding |

Dear Brian,

Per our conversation this afternoon, I am sending you this memo regarding the expenses to be incurred in connection with securing bridge funding related to your promissory note.

We agreed to $7,000.00. This will cover roundtrip airfare for professionals, lodging, some meals, ground transportation, professional fees, supplies, cost of documentation, time and other related expenses.

My banking information for the wire follows:

> PNC Bank
> ABA #031000053
> Account #8606637774
> Further Credit to Judy L. Heard

I am glad to be able to work with you.

Thank you,

*Joseph L. Heard, Sr.*

Joseph L. Heard, Sr.

EXHIBIT
17

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Joseph L. Heard Sr.   215-477-1075

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Arpeggio Investments LP
PO Box 497
Wynnewood, PA 19096

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Strategic Lending Solutions LLC | | | | |

OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 231 W. Main Street | Carpentersville | IL | 60110 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | LLC | IL | IL01315861 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Knight | Brian | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 231 W. Main Street Suite 210 | Carpentersville | IL | 60110 | USA |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Arpeggio Investment LP | | | | |

OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO Box 497 | Wynnewood | PA | 19096 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

```
1.) All assets of Strategic Lending LLC,
2.) Strategic Lending LLC,
3.) All Personal Property of Brian Knight,
4.) All Real Property of Brian Knight
```

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]   ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional]   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8.** OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Oct.31. 2007 10:36AM                                                          No.1572   P. 26

 **HARRIS.**    WIRE TRANSFER REQUEST

| DATE: 5/17/2007 | ACCOUNT TYPE / WIRE TYPE: ☐ PERSONAL ☐ NON-PERSONAL ☒ DOMESTIC ☐ INTERNATIONAL | METHOD OF INITIATION: ☒ IN-PERSON ☐ PHONE ☐ FAX ☐ INTERNAL MAIL (or Email) | REQUESTED EXECUTION DATE (if different from today) 5/17/2007 |
|---|---|---|---|

### CUSTOMER INFORMATION (Complete by Preparer)

| | | IN-PERSON REQUEST |
|---|---|---|

**DEBIT ACCOUNT TYPE:** ☒ CHECKING ACCOUNT  ☐ CHECK (credit DDA 1094317)  ☐ INSTALLMENT LOAN (i.e.HELOC)
☐ CLOSE ACCOUNT  ☐ SAVINGS ACCOUNT  ☐ CASH (credit DDA 1094317)  ☐ COMMERCIAL LOAN

**COMPLETED BY PREPARER**

| DEBIT ACCOUNT # (Account to be charged) 4800619998 | AVAILABLE BALANCE 14227.29 | HOW IS CUSTOMER IDENTIFIED? | ☒ Primary/Secondary ID ☒ Sig. Card/SON ☐ Other (Specify) |
|---|---|---|---|
| NAME ON ACCOUNT (ORIGINATOR) STRATEGIC LENDING SOLUTIONS, LLC | NAME OF INDIVIDUAL MAKING REQUEST BRIAN KNIGHT | HOW IS CUSTOMER AUTHORIZED? | ☐ Resolution (Non-Personal Account) ☐ Sig. Card/SON (Personal Account) ☐ Bank Record/System |
| STREET ADDRESS | | PREPARER'S NAME & PHONE NORMA, ACEVEDO 847-439-2478 | |
| CITY / STATE / ZIP | TELEPHONE NUMBER 847-836-6901 | PREPARER'S SIGNATURE X | |

### WIRE TRANSFER INFORMATION (Complete by Preparer)

**COMPLETED BY APPROVER**

| Domestic (beneficiary within U.S.) | International (beneficiary outside U.S.) | ☐ Customer ID/Signature Verified ☐ Confirm Available Balance ☐ Review Wire Request Information |
|---|---|---|

| AMOUNT OF WIRE: U.S. DOLLARS | 7,000.00 | AMOUNT OF WIRE: FOREIGN  US ☐ CURRENCY TYPE  Foreign ☐ | APPROVER'S NAME & PHONE |
|---|---|---|---|
| FEE | $20.00 | FEE | APPROVER'S SIGNATURE X |
| TOTAL CHARGE TO CUSTOMER: | 7,020.00 | TOTAL CHARGE TO CUSTOMER: | |

### BENEFICIARY INFORMATION

### NON IN-PERSON REQUEST

| BANK ABA (or SWIFT if International) *031000053 | BANK NAME PNC BANK | **COMPLETED BY PREPARER** | |
|---|---|---|---|
| BANK ADDRESS / CITY / STATE / ZIP / COUNTRY (if International) | | HOW IS CUSTOMER AUTHORIZED? | ☐ Resolution (Non-Personal Account) ☐ Sig. Card/SON (Personal Account) ☐ Bank Record/System |
| BENEFICIARY NAME (NAME ON ACCOUNT) JUDY L HEARD | BENEFICIARY ACCOUNT NUMBER *8806637774 | HOW IS CUSTOMER IDENTIFIED? | VOICE ID (NC) BY: ____ OR |
| BENEFICIARY ADDRESS / CITY / STATE / ZIP (COUNTRY if International) | | | OBTAINED FROM   VERIFIED TO CUSTOMER      BANK RECORDS |
| FOR FURTHER/FINAL CREDIT OR OTHER ADDITIONAL INFORMATION: | | TAX ID ☐ ☐ ACCT. OPEN DATE AMT LAST DEPOSIT M M H | |
| | | OTHER (specify) | |

### WIRE TRANSFER DISCLOSURE INFORMATION (International Wires)

Due to the nature and complexity of international banking, it is impossible for Harris to make any guarantees on foreign wire transfers (cables) and /or drafts. We use the fastest and safest method on each item we process. Our fees at the outset cover only our costs in sending funds. Additional fees can be (and often are) incurred by necessary tracing, recall of funds, rate changes and verifications required by foreign banks. While we try to keep these risks to a minimum to protect our customers, we have no control over foreign banks. It should be understood any additional costs or fees are passed on to the customer; the bank is not responsible for variances in foreign exchange rates. As originating bank, Harris relies on the customer for accurate and complete instructions for the receiver/beneficiary bank specifications. Erroneous information can (and often does) result in nonpayment or delay of funds and significant monetary impact to the originator.

| PREPARER'S NAME & PHONE | |
|---|---|
| PREPARER'S SIGNATURE X | |

**COMPLETED BY APPROVER**
☐ Confirm Available Balance
☐ Customer Authorization or Signature Verified

**CUSTOMER SIGNATURE:**
(customer agrees to and confirms all applicable information above)  **X** _Brian Knight_

CALLBACK:
☐ Individual Contacted (Should be Someone Other than Submitter if possible):
Name: ____

Directive & Procedure Exception Documentation, Justification and Approval (required for all exceptions):

Phone #: ____

☐ Wire Request Information Verified with customer

| (Signature of individual authorized to make exceptions to Directive): | APPROVER'S NAME & PHONE |
|---|---|
| Print Name:          Sign Name: **X** | APPROVER'S SIGNATURE X |

| Bank Use Only | ☐ Called wire into GPS by: ____ ☐ Information Email/fax to GPS by ____ ☐ to GPS and over $500.00 | | ☐ GPS Preparer: X ☐ Money Net Ref # | ☐ LOAN INFO: ☐ Email Detail (req'd by BLST) ☐ Money Net Ref # |
|---|---|---|---|---|

EXHIBIT

### Arpeggio Investments LP
PO Box 497
Wynnewood, PA 19096
215-751-9050
mwaldenloans@comcast.net

May 24, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

### Re: Update

Dear Brian,

I am sorry for the delay in completing our commitment agreement. The delay was due to circumstances beyond our control. However, we are still determined to carry out our responsibilities under the agreement.

According to my itinerary, I am scheduled to be in Phoenix tomorrow. I will be there to complete the process. At that time, once I have the actual collateral in hand, I will be able to give you a closing date.

If you have any questions concerning the above, please contact me at the number shown herein.

Yours truly,

Arpeggio Investments LP


EXHIBIT

Kristina Ash

| | |
|---|---|
| From: | Josephiheard@aol.com |
| Sent: | Friday, June 15, 2007 7:53 AM |
| To: | bknight@strategiclendingsolutions.net |
| Subject: | Re: Agreement |

Hello, Brian.
    I am willing to work this. I will call you to go over the details.  Thanks.
Joe Heard.

See what's free at AOL.com.

EXHIBIT
F



Strategic
Lending

## Line of Credit Request
June 28, 2007

Joseph Heard
400 Presidential Blvd, Apt 901
Philadelphia, PA 19131

RE: Line of Credit Request

Dear Mr. Heard,

Strategic Lending Solutions LLC of Carpentersville, IL would like to formally request a draw of $550,000.00 (Five Hundred Fifty Thousand Dollars) from the line of Credit that Arpeggio Investments LP has established on our behalf. We have provided a full set of up to date financials, corporate documents, and the appropriate UCC-1 filing information. Should you have any further information that is necessary to successfully process this request please don't hesitate to call.

Sincerely,

Brian Knight
Executive Loan Officer



EXHIBIT

**JLH and Associates**
PO Box 497
Wynnewood, PA 19096
Phone: 215-477-1075
Cell: 215-778-9642
josephlheard@aol.com

July 10, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

Dear Brian,

Regarding your request for the draw on the $550,000.00, we have available a secure bridge line of credit.

It seems that you have all the qualifications for a conventional secure line of credit. However, in order to draw from the bridge line of credit it must be secured by senior funding, which our office must close out, in addition to any security you have to offer. I am, therefore proposing that we set up $550,000 of bridge funding in a non-depletion escrow account secured by senior funding.

This account may be set up in your company's name and can serve as proof of funds for transactions you are involved in. These funds can be released with proof of senior funding and our office must close out the senior funding transaction. Again, the transaction must be handled and closed out by our office.

Yours truly,
*Joseph L. Heard, Sr.*


EXHIBIT

**JLH and Associates**
PO Box 497
Wynnewood, PA 19096
Phone: 215-477-1075
Cell: 215-778-9642
josephlheard@aol.com

July 20, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

Dear Brian,

Regarding our discussion for a $900,000.00 bridge line of credit, we have available a secure bridge line of credit. In order to draw from this line of credit, it must be secured by additional assets that we are bringing in, under the management of your company that will serve to hedge the line of credit.

We have been working on this process for about three weeks. It is nearly complete. Furthermore we are completing an agreement that will contain the terms of the line of credit. However, if your wish is that we discontinue this process, please let me know in writing. On the other hand, if you want us to continue, we will provide terms and a completion date in said agreement.

Yours truly,

*Joseph L. Heard, Sr.*

Joseph L. Heard, Sr.

EXHIBIT
1

Kristina Ash

| | |
|---|---|
| From: | Josephlheard@aol.com |
| Sent: | Friday, July 20, 2007 5:34 PM |
| To: | bknight@strategiclendingsolutions.net |
| Subject: | Regarding our discussion of the line credit. |

Attachments: JHL Letter to Brian 20070720.pdf

Dear Brian,

Regarding our discussion of the line credit.
Yours truly,
Joseph L. Heard.

Get a sneak peek of the all-new AOL.com.

10/24/2007

Kristina Ash

| From: | Josephlheard@aol.com |
|-------|---------------------|
| Sent: | Thursday, August 09, 2007 8:54 AM |
| To: | bknight@strategiclendingsolutions.net |
| Subject: | To manage with a line of credit of $1,000,000.00. |
| Attachments: | MIDWES~1.PDF |

Dear Brian,

I am sending a Pro Forma Balance Sheet attached to this email. It represents the assets and liabilities which you or your company will manage with a line of credit of $1,000,000.00.

The timeline for getting this done depends upon how quickly we can get the assets transferred over to your management. Once we have an agreement in place, we can come up with an affirmative date.

Thank you,
Joe

Get a sneak peek of the all-new AOL.com.

EXHIBIT

10/24/2007

**T/A Midwest Strategic Funding Trust Inc**
Balance Sheet Pro Forma-- Cash Basis
as of August 9, 2007

### Assets

| | | |
|---|---:|---:|
| Cash | | $   168,000 |
| Real Estate Holdings | $ 18,320,000 | |
| Less:  Mortgages Payable on Real Estate Holdings | (11,798,860) | 6,521,140 |
| | | |
| **Total Assets** | | **$ 6,689,140** |

### Liabilities and Stockholders' Equity

| | |
|---|---:|
| **Liabilities** | |
|   Consulting Fees Payable | $   335,000 |
| | |
| **Total Liabilities** | 335,000 |
| | |
| **Stockholders Equity** | |
|   Common Stock | 168,000 |
|   Retained Earnings | 6,186,140 |
| | |
|   Stockholders Equity | 6,354,140 |
| | |
| **Total Liabilities and Stockholders' Equity** | **$ 6,689,140** |

**JLH and Associates**
*PO. Box 497*
*Wynnewood, PA 19096*
*Phone: 215-477-1075*
*Cell: 215-778-9642*
*josephlheard@aol.com*

August 16, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

Dear Brian,

This letter is a follow-up of our letter of July 20, 2007 regarding a $900,000.00 bridge line of credit.

I am now able to inform you of our target completion date. It is August 27, 2007. This will allow time for completing the necessary paperwork and getting the documents signed.

As there is much documentation that must be completed, I do not anticipate being able to respond to telephone calls each day while completing the process. Please be patient with me. I will attempt to return your calls within 24 hours.

Yours truly,

*Joseph L. Heard Sr.*

Joseph L. Heard, Sr.

EXHIBIT

### JLH and Associates
PO Box 497
Wynnewood, PA 19096
Phone: 215-477-1075
Cell: 215-778-9642
josephlheard@aol.com

September 5, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

Dear Brian,

I am taking care of this letter myself, rather than to consult with my attorney or have it prepared by an independent CPA, in order to save us time, especially in view of your critical time situation. This also enables me to concentrate on completing the funding process rather than attempting to explain to other professionals my area of expertise. Not to mention, my attorney is out of town for at least a week. I don't want it to take even one day longer than necessary.

Regarding funding: We have made significant progress since we met with you. We expect to have funds available for you within ten days. We have not purposely delayed the process. In fact delays are part of the process. Because of the complicated strategies involved and the lot of necessary paperwork, it often takes longer than projected.

Please refer to the Balance Sheet Pro Forma we sent to you for proof of capability.

Yours truly,
Joseph L. Heard, Sr.

EXHIBIT

# Joseph L. Heard
PO Box 497
Wynnewood, PA 19096
215-477-1075
josephlheard@aol.com

June 6, 2007

Strategic Lending Solutions LLC
Brian Knight
231 W. Main Street, Suite 210
Carpentersville, IL 60110
Phone: 847-836-6901; Fax: 847-836-6916;
Email: bknight@strategiclendingsolutions.net

### Re: Bridge Loan Commitment – $350,000.00

Dear Brian,

I am sending you a refund of the $7,000.00 that you wired to me, which amount was to cover the expenses incurred in the Arpeggio deal. Though the expenses exceeded this amount, we are refunding it to you because we see no benefit in acting otherwise.

I am taking this action because of our telephone conversation this afternoon in which you explained that it is imperative to meet a deadline by 3:00 p.m. today, June 6, 2007, namely to have $350,000.00 wired into your account by that time.

I have explained to you that this would be impossible as the $350,000.00 was to serve as bridge funds and we have not been able to establish senior funding OUT of the deal. Enclosed is a copy of the Arpeggio Investments LP letter sent to you, dated May 16, 2007, in which this requirement was explained in detail.

If you have any questions concerning the above, I may be contacted at the numbers shown hereon.

The funds will be wired to the following account:

| Company Name: | Strategic Lending Solutions |
| Routing Number: | 071025661 |
| Account Number: | 4800619998 |
| Bank Information: | Harris Bank & Trust |
| | 6900 Huntley Rd. |
| | Carpentersville, IL 60110 |

Yours truly,

Joseph L. Heard

EXHIBIT

AO 440 (Rev. 05-00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

SUMMONS IN A CIVIL CASE

Strategic Lending Solutions, LLC

V.

Joseph L. Heard d/b/a JLH & Associates,
Arpeggio Investments, LP, and Arpeggio
Management, LLC

CASE NUMBER:   **07C  6136**

ASSIGNED JUDGE:   *JUDGE HOLDERMAN*

DESIGNATED
MAGISTRATE JUDGE:   *MAGISTRATE JUDGE KEYS*

TO: (Name and address of Defendant)

Joseph L. Heard, Sr. d/b/a JLH & Associates
4000 Presidential Blvd., Suite. 901
Philadelphia, PA 19131

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Patterson Law Firm, PC
33 N. La Salle St. Ste 3350
Chicago, IL 60602

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

**JANNETTE RUIZEZ**                                    OCT 30 2007

(By) DEPUTY CLERK                                      DATE

Court: In the United States District Court–For the Northern District of Illinois, Eastern Division
Case No.: 07 C 6136

Plaintiff/Petitioner: Strategic Lending Solutions, Inc.
vs.
Defendant/Respondent: Joseph L. Heard, Sr., d/b/a JLH & Associates, et al.

Received by Elite Process Serving & Investigations, Inc. to be served upon:

Joseph L. Heard, Sr., d/b/a JLH & Associates

STATE OF _Pennsylvania_
COUNTY OF _Philadelphia_

I, _Donald Dougherty_, depose and state that I am investigator, process server and agent of Elite Process Serving & Investigations, Inc. located in Lisle, Illinois, with an Illinois Detective Agency License of #117–001199. I was contracted to serve process in the above captioned matter. I further acknowledge that I am authorized to effectuate service of process in the State and County first stated above.

On _11-9-07_ at _11:30 PM_ I served the within **Summons in a Civil Case and Verified Complaint** on **Joseph L. Heard, Sr., d/b/a JLH & Associates** at _Jerry L Heard_ _____, _____, _____ in the manner indicated below:

[ ] **INDIVIDUAL SERVICE:** By personally delivering to and leaving same with said individual and that deponent knew such individual to be the Defendant/Respondent named herein.

[ ] Actual Place of Residence          [ ] Actual Place of Business within the State

[ ] **CORPORATION OR PARTNERSHIP:** By delivering a true and correct copy of each to _____ personally. Deponent knew said corporation/partnership so served to be the corporation/partnership described in said aforementioned document as said defendant and knew said individual to be agent/employee thereof.

[X] **ABODE SERVICE:** By personally delivering to and leaving same with _Judy Heard_ _____, an occupant of the premises and a person of the family of the age of 13 year or older and informing this person of the contents thereof. I further mailed a true and correct copy of each in a sealed envelope with postage prepaid addressed to the defendant at the address listed above on _11-12-07_, 2007 and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service.

The facts and matters set forth above are based upon my personal knowledge and if called to testify herein, I could do so competently.

Description of person served: Sex: _F_ Age: _60-70_ Race: _WS_ Hair: _Blond_ Height: _5'_ Weight: _120_

x _____

_Donald Dougherty_
Elite Process Serving & Investigations, Inc.      (print name)
P.O. Box 4886
Naperville, IL  60567
(630) 299-4600

Subscribed and Sworn to before me on this
_13th_ day of _November_, 20 _07_

_Catherine A. Harrigan_
NOTARY PUBLIC

**COMMONWEALTH OF PENNSYLVANIA**

NOTARIAL SEAL
CATHERINE A. HARRIGAN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 24, 2011

PLAINTIFF'S
EXHIBIT
B

9404

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | November 9, 2007 |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|
| Donald Dougherty | Civil Process Server |

Check one box below to indicate appropriate method of service

G Served personally upon the defendant. Place where served: _____

_____

(G) Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: *Judy Heard*

G Returned unexecuted: _____

_____

_____

G Other (specify): _____

_____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on *November 9, 2007*
Date          Signature of Server

*2215 Arch Street*
*Philadelphia PA 19103*
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

I acknowledge that I am in receipt of these documents presented to me by the process server.

11-9-07

_____        _____
SIGNATURE                                      DATE

Judy Heard                                  Wife

_____        _____
PRINTED NAME                                 TITLE

## APPEARANCE FORM FOR PRO SE LITIGANTS
## DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

Information entered on this form is required for any person filing a case in this court as a pro se party (that is, without an attorney).

NAME: _Joseph L. Heard, Sr._
(Please print)

STREET ADDRESS: _4000 Presidential Blvd. Apt. 901_

CITY/STATE/ZIP: _Philadelphia, PA 19131_

PHONE NUMBER: _(215) 477-1075_

CASE NUMBER: _07C 6136_

_Joseph L. Heard_
Signature

_02/18/08_
Date